UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**273 LEE AVENUE TENANTS ASSOCATION**,
an unincorporated association, by and in the name of
its President, **CINDY SANCHEZ**,
and members **SARA OYOLA** and
**KATHLEEN SANTIAGO**,
     *Plaintiffs*,


         -against-


**NAFTALI STEINMETZ** and
**273 LEE REALTY, LLC**
     *Defendants*.
------------------------------------------------------------X

Civil Action No. 16 CV 6942
(WFK)(CLP)

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

---

BROOKLYN LEGAL SERVICES CORPORATION A
Martin S. Needelman, Esq.
By:    Gregory E. Louis
       Sara Wolkensdorfer
       Shekar Krishnan

1

9968411v.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ..........................................................................................................................5

I.    THE STANDARD FOR A PRELIMINARY INJUNCTION AND TEMPORARY
      RESTRAINING ORDER .............................................................................................5

II.   MOVING PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF INJUNCTIVE
      RELIEF IS NOT GRANTED .......................................................................................5

III.  PLAINTIFFS HAVE ESTABLISHED SERIOUS QUESTIONS GOING TO THE
      MERITS OF THE CLAIMS AND THE BALANCE OF HARDSHIPS TIPS
      DECIDEDLY IN THEIR FAVOR ................................................................................7

      A.    Section 1982 Claim...........................................................................................8

      B.    Fair Housing Act Claims ...................................................................................9

IV.   PLAINTIFFS REQUEST FOR A TEMPORARY RESTRAINING ORDER AND
      PRELIMINARY INJUNCTION ARE NOT BARRED BY THE ANTI-INJUNCTION
      ACT.......................................................................................................................12

V.    PLAINTIFFS SHOULD BE RELIEVED OF THE REQUIREMENTS OF FRCP 65 (C)
      BECAUSE THEY ARE INDIGENT AND DEFENDANTS CAN SHOW NO HARM
      FROM WAIVER OF THE SECURITY REQUIREMENT ...............................................16

CONCLUSION......................................................................................................................18

9968411v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. Zach Associates*,
124 A.D.2d 531 (2d Dep't. 1986) ...............................................................................6

*Andino v. Fischer*,
555 F. Supp. 2d 418 (S.D.N.Y. 2008)..........................................................................5

*Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers*,
398 U.S. 281 (1970)....................................................................................................12

*Bass v. Richardson*,
338 F. Supp. 478 (S.D.N.Y. 1971) .............................................................................17

*Berlinrut v. Leventhal*,
43 AD2d 522 (N.Y. App. Div. 1st Dept. 1973) .........................................................13

*Bottini v. Sadore*,
764 F.2d 116 (2d Cir. 1985)........................................................................................12

*Broadway Triangle Community Coalition v. Bloomberg*,
35 Misc.3d 167 (Sup. Ct. New York Co. 2011) ..........................................................1

*Cabrera v. Jakabovitz*,
24 F.3d 372 (2d Cir. 1994)............................................................................................8

*Calvagno v. Bisbal*,
430 F.Supp.2d 95 (E.D.N.Y. 2006) ..............................................................................6

*Caulfield v. Bd. of Educ. of the City of New York*,
583 F.2d 605 (2d Cir. 1978).........................................................................................5

*Crown Gardens Housing v. Simmons*, N.Y.L.J. April 16, 1990,
cl. 1 (Civ. Ct. Kings Co. 1990) .....................................................................................6

*Corrigan Dispatch Co. v. Casa Guzman, S.A.*,
569 F.2d 300 (5th Cir. 1978) ......................................................................................16

*Cox v. JD Realty Assocs.*,
217 AD2d 179 (N.Y. App. Div. 1st Dept. 1995)........................................................13

*Davis v. Boyle-Midway, Inc.*,
615 F.Supp. 560 (N.D Ga 1985) ...................................................................................8

ii

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Delavan v. Spirounias,*
  11 Misc.3d 138(A) (N.Y. App. Term. 1st Dept. 2006)................................................13

*Doctor's Assocs., Inc. v. Distajo,*
  107 F.3d 126 (2d Cir.1997)...........................................................................................16

*Doe v. Perales,*
  782 F. Supp. 201 (W.D.N.Y.1991) ...............................................................................17

*Gresham v. Windrush Partners, Ltd.,*
  730 F.2d 1417 (11th Cir. 1984) ......................................................................................6

*Heisman Trophy Trust v. Smack Apparel Co.,*
  595 F. Supp. 2d 320 (S.D.N.Y. 2009)..........................................................................17

*Horsford v. Bacott,*
  5 Misc.3d 132(A) (N.Y. App. Term. 1st Dept. 2006), *aff'd* 32 A.D.3d 310
  (N.Y App. Div. 1st Dept.)..............................................................................................13

*Illinois Bell Tel. Co. v. Illinois Commerce Comm'n.,*
  740 F.2d 566 (7th Cir. 1984) ..........................................................................................6

*Int'l Controls Corp. v. Vesco,*
  490 F.2d 1334 (2d Cir. 1974).......................................................................................16

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
  596 F.2d 70 (2d Cir. 1979)........................................................................................5, 8

*Johnson v. Macy,*
  145 F.Supp.3d 907 (C.D. Cal. 2015) ......................................................................10, 15

*Jones v. Alfred H. Mayer Co.,*
  392 U.S. 409 (1968)....................................................................................................8, 14

*Kulakowski v. Rochester Hosp. Serv. Corp.,*
  779 F. Supp. 710 (W.D.N.Y. 1991) ..............................................................................17

*La Plaza Defense League v. Kemp,*
  742 F. Supp. 792 (S.D.N.Y. 1990) ...............................................................................16

*Lopez v. Delta Funding Corp.,*
  1998 WL 1537755 (E.D.N.Y. Dec. 23, 1998) ..............................................................17

*McNeil v. NYCHA,*
  719 F. Supp. 233 (S.D.N.Y. 1989) .................................................................................5

iii

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*MHANY Management Inc. v. County of Nassau*,
    819 F.3d 581 ...............................................................................................................14

*N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010)..........................................................................17

*Naftali Steinmetz v. Kathleen Santiago*
    (Index No. 70321/11).....................................................................................................2

*Naftali Steinmetz v. Sara Oyola*
    (Index No. 70336/11).....................................................................................................2

*Ortiz v. Five Seven Naught Associates*,
    2006 NY Slip Op 30596(U) (Sup. Ct. N.Y. Cnty. 2006)...............................................6

*Owens v. Housing Authority for the City of Stamford*,
    394 F. Supp (D. Conn. 1975)..........................................................................................7

*Pathways, Inc. v. Dunne*,
    329 F.2d 108 (2d Cir. 2003).........................................................................................12

*Rivera v. Town of Huntington Housing Auth.*,
    2012 BL 132367, at *7 (E.D.N.Y. May 29, 2012) ......................................................17

*Rivera v. Town of Huntington Housing Authority*,
    2012 WL 1933767 (E.D.N.Y. May 29, 2012) .............................................................17

*Robinson v.12 Lofts Realty, Inc.*,
    610 F.2d 1032 (2d Cir. 1979)..............................................................................10, 14

*Rogers v. Joy*,
    58 A.D.2d 545 (N.Y. App. Div. 1st Dept. 1977) ........................................................13

*Matter of Santiago-Monteverde*,
    24 N.Y.3d 283 (2014) ....................................................................................................7

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
    251 F.3d 814 (9th Cir. 2001) ..........................................................................................6

*Sinisgallo v. Town of Islip Housing Authority*,
    865 F.Supp.2d 307 (E.D.N.Y. 2012) .....................................................................12, 16

*Smith v. Sol D. Adler Realty Corp.*,
    436 F.2d 344 (7th Cir. 1970) ................................................................................10, 15

iv

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Steinmetz v. Santiago*,
  2015 WL 1033937 (N.Y. City Cv. Ct., Kings Co.) ...................................................................11

*Tellock v. Davis*,
  2002 WL 31433589 (E.D.N.Y.)...........................................................................................15

*U.S. v. Katz*,
  2011 WL 2175787 (S.D.N.Y.)........................................................................................12, 15

*U.S. v. Pelzer Realty Co., Inc.*,
  484 F.2d 438 (5th Cir. 1973) ...............................................................................................15

*United States v. Town Hall Terrace Assn*,
  1997 WL 128353 (W.D.N.Y.) ...............................................................................................14

*Warner v. Ryobi Motor Prods. Corp.*,
  818 F. Supp. 907 (D.S.C. 1992)............................................................................................17

*Wendling v. 136 E. 64th Street Assoc.*,
  128 A.D.2d 419 (N.Y. App. Div. 1st Dept. 1987) .....................................................................6

*Westside Ventura LLC v. New York City Department of Housing Preservation and
  Development*,
  2011 WL 2292588 (N.Y. Co. Sup. Ct.) ...................................................................................11

**Statutes**

42 U.S.C. § 3604(d) ......................................................................................................................14

Anti-Injunction Act, 28 U.S.C. § 2283 .................................................................................. *passim*

Civil Rights Act of 1866, 42 U.S.C. § 1982, *et seq* ....................................................................4, 9

Fair Housing Act, 42 U.S.C. § 3601, *et seq.*............................................................................ *passim*

New York City Human Rights Law, New York City Admin. Code § 8-107, *et
  seq.*. ............................................................................................................................................4, 7

State Human Rights Law, Exec. Law § 296, *et seq.*......................................................................4, 7

**Other Authorities**

24 C.F.R § 100.1 .............................................................................................................................9

24 C.F.R. § 100.50..........................................................................................................................14

24 C.F.R. § 100.60..........................................................................................................................9, 10

9968411v.1

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

24 C.F.R. §§ 100.75 ....................................................................................................9, 14

24 CFR § 100.80 .............................................................................................................9

9 N.Y.C.R.R. § 2524.4(a) .............................................................................................12

Fed. R. Civ. Pro. 12(f).....................................................................................................4

Fed. R. Civ. Pro. 65(c) .......................................................................................16, 17, 18

vi

## PRELIMINARY STATEMENT

Plaintiffs Kathleen Santiago and Sara Oyola ("Moving Plaintiffs")[1] seek a temporary restraining order and preliminary injunction prohibiting Defendants Naftali Steinmetz and 273 Lee Realty, LLC from evicting or ejecting them from, or otherwise dispossessing them of, their homes of thirty years located at 273 Lee Avenue, Brooklyn, New York 11206 pending the determination of this fair housing action for injunctive and declaratory relief.  The Moving Plaintiffs will suffer immediate and irreparable injury if this motion is not granted as they face eviction as soon as this Thursday, August 24, 2017.

The Moving Plaintiffs, longstanding Latina and rent-regulated tenants residing in South Williamsburg[2], face eviction because the Kings County Civil Court awarded judgments of possession and warrants of eviction against Plaintiffs in a state court eviction proceeding; the City Marshal's office served Plaintiffs with the warrants of eviction this past Saturday, August 18, 2017.  In the instant action, all Plaintiffs contend that the state eviction proceedings were one of the many means, in addition to failing to (i) make repairs to their units, (ii) provide them services provided to other classes of tenants, and (iii) advertise vacancies at the dwelling that have been rented out exclusively to one class of tenants, that Defendants have discriminated against them.  (*See* Compl. ¶¶ 107-41.)  In view to the pending evictions, they seek an injunction to avoid irreparable harm as they continue through this litigation aimed to protect their civil rights.

A remedy can only come from this Court because, as discussed further below, Plaintiffs could not have enforced their fair housing rights in the state eviction proceeding.  As a general

---

[1] Cindy Sanchez and 273 Lee Avenue Tenants Association are also Plaintiffs in the instant action.  *See generally* Compl.  For purposes of clarity, we therefore refer to Sara Oyola and Kathleen Santiago as the "Moving Plaintiffs."

[2] *See Broadway Triangle Community Coalition v. Bloomberg*, 35 Misc.3d 167, 169-70 (Sup. Ct. New York Co. 2011) (citing *Ungar v. New York City Housing Auth.*, 2009 WL 125236 (S.D.N.Y.) for a history of housing segregation in Williamsburg.

1

matter, housing court lacks the power to afford relief for housing discrimination and, with limited discovery, is not an adequate forum for the determination of federal rights.  Particular to the eviction case at issue in this motion, the standards governing the state eviction proceeding lack mixed-motive analysis so fundamental to the disposition of federal discrimination.

Thus, without the injunction, Plaintiffs Santiago and Oyola will have no meaningful remedy to prevent an unlawful eviction brought against them based on their status as Latinos. Accordingly, Plaintiffs request that the Court stay the eviction, thereby preventing their homelessness and preserving the status quo.

### STATEMENT OF FACTS

The relevant facts are drawn from the annexed declaration of Sara Oyola, dated August 21, 2017 ("Oyola Decl."), the annexed declaration of Kathleen Santiago, dated August 22, 2017 ("Santiago Decl."), the affidavit of Cindy Sanchez, sworn to on October 8, 2015 ("Sanchez Affidavit"), the Declaration of Gregory E. Louis, dated August 22, 2017 ("Louis Decl."), and the Complaint.

The injunction that Plaintiffs seek through this motion concerns eviction arising out of the state court eviction proceedings Plaintiffs allege as a mode of Defendants' discrimination. (*See* Compl. ¶¶ 118-150, 176).  Those proceedings, *Naftali Steinmetz v. Kathleen Santiago* (Index No. 70321/11) and *Naftali Steinmetz v. Sara Oyola* (Index No. 70336/11) were commenced in 2011 before the Civil Court of the City of New York, Kings County Housing Part ("Housing Court").

On March 24, 2017, the Housing Court issued a decision awarding Defendant Naftali Steinmetz a judgment of possession and a warrant of eviction, staying its execution until June 30, 2017. (*See* Louis Decl., Ex. 3).  On April 4, 2017, Moving Plaintiffs took an appeal of that

2

decision to the Appellate Term of the Supreme Court of the State of New York.  On or about June 22, 2017, Plaintiffs Oyola and Santiago moved the appeals court for a stay of eviction pending appeal on state law grounds.  By decisions and orders each dated August 11, 2017, the appeals court denied their motions for stays of eviction pending state court appeal.

On or about August 19, 2017, Plaintiffs Santiago and Oyola were served with notices of eviction under the Housing Court decision.  (*See* Louis Decl., Ex. 2).  These notices subject them to eviction as early as this Thursday, August 24, 2017.  The City Marshal's office has represented that, as of today, the evictions are scheduled for August 28, 2017 in the case of Sara Oyola and September 6, 2017 in the case of Kathleen Santiago.  (*See* Louis Decl., ¶ 4).

Plaintiffs thus move for an injunction against eviction to avoid one of the very harms that they commenced this litigation to prevent.  For along with Plaintiff Cindy Sanchez, Plaintiffs Sara Oyola and Kathleen Santiago are low-income Latina residents of 273 Lee Avenue ("273 Lee"), a rent-stabilized building in Williamsburg, Brooklyn.  They have lived in their homes with their families for thirty years.  (*See* Compl. ¶ 2.)  After Defendants became owners of 273 Lee in 2006, they systemically discriminated against Plaintiffs and their family members as part of their effort to rid the building of its Latina tenants and replace them with tenants who are Hasidic Jewish.  (*See* Compl. ¶¶ 8, 141.)  Plaintiffs and their family members were forced to go to Housing Court (defined below) to receive basic repairs in their homes, and Defendants began harassing Plaintiffs and their family members to accept buyout offers for their apartments.  (*See* Compl. ¶7.)  In some respects, Defendants' plan worked—beginning in 2009, some of Plaintiffs' family members accepted the buyout offers and moved out of their homes.  Defendants did not advertise these vacancies, and each Latino family that moved out was, on information and belief, replaced with a Hasidic Jewish one.  (*See* Compl. ¶¶ 7, 8, 125-50; Sanchez Affidavit, ¶ 11-12).

3

9968411v.1

After the Hasidic Jewish tenants moved in, Defendants made clear that Plaintiffs were second-class citizens in 273 Lee. For example, Plaintiffs' requests for basic repairs were ignored or inadequately addressed; those of their Hasidic Jewish neighbors were taken care of promptly and expertly. (*See* Compl. ¶¶ 47-106.) The water lines to Plaintiffs' washing machines were surreptitiously cut; new machines were installed into their Hasidic Jewish neighbors' apartments. (*See* Compl. ¶ 57.) The thermostat to the building was moved out of Plaintiff Oyola's apartment; it was placed instead in a Hasidic Jewish tenant's apartment and turned off whenever the Hasidic Jewish tenants were not in the building. (*See* Compl. ¶¶ 70-77.)

After enduring this discriminatory treatment for over a decade, Plaintiffs commenced this fair housing action on December 15, 2016, bringing claims against Defendants under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; New York State Human Rights Law, Exec. Law § 296, *et seq.*; New York City Human Rights Law, New York City Admin. Code § 8-107, *et seq.*; and the Civil Rights Act of 1866, 42 U.S.C. § 1982, *et seq* ("Action"). These statutes were enacted to serve the important public purpose of eradicating housing discrimination, and each contains clear provisions that entitle Plaintiffs to punitive damages and equitable relief.

On February 10, 2017, Defendants filed their Answer to the Complaint, which they amended on March 27, 2017.

Currently, the action is in discovery.[3] Pursuant to the Hon. Cheryl L. Pollak's order, dated May 18, 2017, discovery is limited to information from December 2012 ongoing. Within these parameters, the parties have exchanged demands for document productions and interrogatories; they have also given one another access to hard copies of documents. (See Louis Decl., ¶¶ 6-8).

---

[3] The Court is also considering Plaintiffs' motion, under Fed R Civ Pro 12(f), to strike seven of Defendants' twenty-three affirmative defenses.

4

## ARGUMENT

**I.     THE STANDARD FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Courts will grant a preliminary injunction or temporary restraining order when a party seeking such relief shows:

> [P]ossible irreparable injury and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Caulfield v. Bd. of Educ. of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978) (emphasis in original) (citations omitted); *see also*, *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008).

Where the balance of hardships tips decidedly in favor of the moving party, the Second Circuit has demanded considerably less in terms of "likelihood of success:"

> To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and for more deliberate investigation. *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) (citations omitted).

**II.     MOVING PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF INJUNCTIVE RELIEF IS NOT GRANTED**

Moving Plaintiffs will suffer irreparable injury if they are not afforded injunctive relief. First, Moving Plaintiffs face eviction from their homes as soon as this Thursday, August 24, 2017.  Federal and New York courts have consistently and repeatedly determined that the threat of eviction or homelessness constitutes irreparable injury warranting injunctive relief. *See, e.g., McNeil v. NYCHA*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989) ("The threat of eviction and the

5

9968411v.1

realistic prospect of homelessness constitutes a threat of irreparable injury, and satisfies the [this] prong of the test for preliminary injunctive relief."); *Calvagno v. Bisbal* , 430 F.Supp.2d 95, 100 (E.D.N.Y. 2006) (granting temporary restraining order and preliminary injunction enjoining defendant from proceeding against plaintiffs in state eviction proceedings on basis that plaintiffs stood to lose their only home); *Crown Gardens Housing v. Simmons*, N.Y.L.J. April 16, 1990, p. 31, cl. 1 (Civ. Ct. Kings Co. 1990) (granting stay of summary eviction proceeding pending tenant's Article 78 action on ground that such "is appropriate where the tenant may be irreparably harmed by the threat of possibility of homelessness"); *Abel v. Zach Associates*, 124 A.D.2d 531 (2d Dep't. 1986); *Wendling v. 136 E. 64th Street Assoc.*, 128 A.D.2d 419 (N.Y. App. Div. 1st Dept. 1987); *Ortiz v. Five Seven Naught Associates*, 2006 NY Slip Op 30596(U) (Sup. Ct. N.Y. Cnty. 2006).

Moreover, irreparable harm is presumed once a person establishes a violation of the Fair Housing Act. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 826 (9th Cir. 2001); *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984); *see also Illinois Bell Tel. Co. v. Illinois Commerce Comm'n.*, 740 F.2d 566, 571 (7th Cir. 1984) (finding that a traditional showing of irreparable harm is not required if the statute specifically provides for injunctive relief). In *Silver Sage Partners*, the Ninth Circuit found that "where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." 251 F.3d at 827. The Court cited to *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984), where the circuit found that "irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes." *Id.* Given that Plaintiffs will imminently lose access to building services and their property interest in rent-regulated housing of thirty years as a result of Defendants'

6

9968411v.1

discriminatory housing proceedings, they will be denied rights under the Fair Housing Act, and will thus, be immediately and irreparably harmed.

Here, Moving Plaintiffs' harm is only compounded by the prospect of being evicted from their rent-stabilized homes of twenty-nine (29) years and thirty-two (32) years, respectively.[4] Eviction would not only leave them homeless but also would deprive them of their property interest in affordable, rent-stabilized housing, and as a result of discrimination by their landlord. *See Matter of Santiago-Monteverde*, 24 N.Y.3d 283, 289 (2014) (holding, in response to certified question from Second Circuit, that rent-stabilized housing is a local public benefit giving affordable housing); *see also Owens v. Housing Authority for the City of Stamford*, 394 F. Supp, 1267, 1271 (D. Conn. 1975) ("[W]ith impending eviction from their homes almost a certainty, the plaintiffs' harm is great and immediate; with low-rent housing as scarce as it is, the injury suffered by eviction is irreparable."). Once evicted, it would be virtually impossible for them to return home.[5]

## III.   PLAINTIFFS HAVE ESTABLISHED SERIOUS QUESTIONS GOING TO THE MERITS OF THE CLAIMS AND THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN THEIR FAVOR

Moving Plaintiffs allege that Defendants have violated their rights under: (1) the Civil Rights Act of 1866, 42 U.S.C. § 1982, and (2) the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), by seeking to evict them from 273 Lee and treating them differently from the Hasidic Jewish tenants who reside therein.[6]

---

[4] *See* Oyola Decl., ¶ 1; Santiago Decl., ¶ 1

[5] https://www.nytimes.com/2014/12/19/nyregion/in-twist-tenant-who-was-forced-out-will-displace-one-who-moved-in.html?mcubz=1  ("Typically in Housing Court they would be unwilling to reverse a tenant in residency, even for a tenant who had been moved out unfairly. Usually there is a civil money penalty, but it is very uncommon to evict another tenant")(accessed on August 22, 2017).

[6] In the Complaint, Plaintiffs also raise claims under the New York State Human Rights Law and New York City Human Rights Law.  (*See* Complaint, ¶¶ 160-171).. Because those claims are substantially equivalent to the federal ones and, therefore, do not add much to the analysis, discussion of them is omitted in the interest of brevity.

7

As stated above and supported by Exhibits 6 and 7 to the Louis Declaration, the Action currently is in the midst of discovery. As Plaintiffs are still receiving documents and other information furnishing proof of their claims, they focus here on showing that they present sufficiently serious questions going to the merits and that the balance of hardships tips decidedly in their favor. *See Jackson Dairy, Inc.*, 596 F.2d at 72.

### A.     Section 1982 Claim

Applying the Second Circuit's framework under *Cabrera v. Jakabovitz*, 24 F.3d 372, 381-82 (2d Cir. 1994), Plaintiffs will prevail on their Section 1982 claim if they prove that (1) they are a member of a class protected by the state, (2) they sought an apartment, (3) they were denied an opportunity to rent the apartment, and (4) it remained vacant thereafter.

Plaintiffs satisfy the first element because Plaintiffs Santiago and Oyola identify as Latinos and Latinos are a "race" for the purposes of Section 1982. *See Davis v. Boyle-Midway, Inc.*, 615 F.Supp. 560, 561 (N.D Ga 1985). Plaintiffs' standing as outsiders – they are not white or Hasidic Jewish – also is a racial classification within the sense of Section 1982. *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 421 (1968) (characterizing housing for whites only as violating Section 1982).

The discovery Plaintiffs have received to date shows that there are serious issues going to the merits of the remaining elements. For example, Defendants have disclosed property registrations with the government showing that in 2011, all units in 273 Lee were occupied, half by Latinos. However, from 2012 to 2014, there were five registered vacancies – only Plaintiffs' units were occupied; there were four registered vacancies in 2015, and two in 2016. (*See* Louis Decl., Ex. 7). In view to Defendants' failure to advertise available apartments despite the premises being shown to individuals who appear Hasidic Jewish (*see* Sanchez Affidavit) and

8

Defendants refusal to offer vacant units to Plaintiffs Santiago and Oyola as alleged in the Complaint (*See* Complaint, ¶¶ 131-132, 142-150), the vacancies point to serious issues going to the merits of Moving Plaintiffs' Section 1982 claim.

### B.    Fair Housing Act Claims

There are likewise serious issues going to the merits of Moving Plaintiffs' two FHA claims (*See* Complaint, ¶¶ 160-165 and 172-177).  Plaintiffs first allege a claim under Section 3604(b) of the FHA, which relevantly prohibits discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of race, color, religion or national origin.  Federal regulations implementing the FHA[7] clarify that actions constituting a violation of Section 3604(b) include (i) failing or delaying maintenance or repairs of rental dwellings, (ii) limiting the use of privileges, services, or facilities associated with a dwelling, or (iii) subjecting a person to harassment because of race, color, religion, or national origin.  *See* 24 C.F.R. § 100.65(b)(2), (4), or (7)

Their second FHA claim is under Section 3604(d), which relevantly prohibits representing to any person, because of race, color, religion, or national origin, that a dwelling is not available for rental when it is fact available.  Federal regulations clarify that actions such as (i) using words, phrases, photographs, illustrations, symbols, or forms which convey that dwellings are available or not available to a particular group of persons, (ii) selecting media or locations for advertising the sale or rental of dwellings which deny particular segments of the housing market information about housing opportunities, (iii) refusing to publish advertising for the rental of dwellings, or (iv) providing false or inaccurate information regarding the availability of a dwelling for rental to any person because of race, color, religion, or national violates Section 3604(d).  *See* 24 C.F.R. §§ 100.75(c)(1) and (3), 100.80(b)(5)

---

[7]*See* 24 C.F.R § 100.1.

Federal regulations also clarify that evicting tenants because of their race, color, religion, or national origin violates Section 3604(a) of the FHA. *See* 24 C.F.R. § 100.60(b)(5). Section 1982 and Section 3604(a) are governed by the same standards where a plaintiff alleges intentional race-based discrimination involving the rental of housing. *See Robinson v.12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir. 1979).

Moving Plaintiffs will establish their Section 1982 or Section 3604(a) claim, as clarified by 24 CFR § 100.60(b), that they are being evicted because they are Latinos or not Hasidic Jews, if they prove that one of Defendants' considerations in commencing the eviction proceeding was Plaintiffs' standing as Latinos or non-Hasidic Jews. As stated above, Plaintiffs are Latinos or non-Hasidic Jews; thus, under the plain language of the FHA as well as caselaw, they are a racial, national origin, or religious class. Moreover, documents that Defendants recently produced for Plaintiffs, namely, email correspondence between Defendants and their managing agents for the premises, speak of the need for "serious solutions on ppl down stairs," twice reference "go ahead on the move out" after Plaintiffs Oyola and Santiago had obtained emergency repairs from New York City, and lament how, apparently, there is nothing the managing agent can do to stop Plaintiffs from lodging housing complaints except "deal with it in court" (*See* Louis Decl., Ex. 6, thirteen, fourteen, and twenty-second pages of that exhibit). This information points to serious issues on the merits since even economically inspired racial basis violates fair housing laws. *See, e.g., Smith v. Sol D. Adler Realty Corp.,* 436 F.2d 344, 349-50 (7th Cir. 1970) (reversing and remanding dismissal of complaint alleging discriminatory refusal to approve sublease on the basis that any racial discrimination, although economically motivated, is forbidden: there is "[n]o acceptable place in the law for partial discrimination");

10

9968411v.1

*Johnson v. Macy*, 145 F.Supp.3d 907, 915 (C.D. Cal. 2015) (holding that discriminatory intent need not even be "motivated by personal prejudice or animus").

For Plaintiffs' Section 3604(b) claim that Defendants are failing to or delaying in making repairs because Plaintiffs are Latinos or not Hasidic Jews, Defendants' disclosure of emails (Louis Decl., Ex. 6) also shows a concentration of housing code violations in Plaintiffs' apartments. One document – reference to an emergency repair order – allows the Court to draw an inference that Defendants failed to make repairs since in New York City emergency repairs are typically performed when a city agency determines that an owner has failed to correct violations. (Louis Decl., Ex. 6, fourteenth page). *See, e.g.*, *Westside Ventura LLC v. New York City Department of Housing Preservation and Development*, 2011 WL 2292588 (N.Y. Co. Sup. Ct.) (explaining emergency repair system). So again Plaintiffs show serious issues going to the merits. And one of Defendants' disclosures contains an admission from a worker lamenting his failure to have done the work by installing steel metal floors. (*See* Louis Decl., Ex. 6, first page). This points to an issue about the quality of repairs Plaintiffs have received.

Finally, Plaintiffs' Section 3604(d) claim, about Defendants' unlawful failure to advertise vacancies at 273 Lee largely tracks their Section 1982 claim. As discussed above, Plaintiffs simply need to depose Defendants and its agents to obtain ultimate proof of that claim.

The balance of hardships decidedly tips in favor of Moving Plaintiffs. They are facing imminent eviction, loss of their homes, and loss of the community that they have called home for about 30 years. By contrast, Defendants face nothing more than the same status quo they have been content with and even have perpetuated themselves. *See Steinmetz v. Santiago*, 2015 WL 1033937 at *8, fn. 63 (N.Y. City Cv. Ct., Kings Co.) (noting that Defendant Steinmetz admitted

to delaying resumption of eviction cases for nine (9) months in order to seek a document that had nothing to do with its *prima facie* case for the eviction proceeding).

Because Moving Plaintiffs have established serious questions going to the merits of the claims and that the balance of hardships tips decidedly in their favor, Court should issue the Order to Show Cause and Temporary Restraining Order.

**IV.    PLAINTIFFS REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE NOT BARRED BY THE ANTI-INJUNCTION ACT**

Although Moving Plaintiffs' requested injunction would prevent the execution or enforcement of a state court judgment, the request is not barred by the Anti-Injunction Act, 28 U.S.C. § 2283 ("AIA"),[8] as it request falls within one of the AIA's three recognized exemptions.

A federal court may grant an injunction against state court proceedings if the request falls within one of three circumstances: "(1) the express provisions of another act of Congress authorizing such an order; (2) necessity in aid of the federal court's jurisdiction, and (iii) the need to protect or effectuate the federal court's judgments." *Sinisgallo v. Town of Islip Housing Authority*, 865 F.Supp.2d 307, 316-317 (E.D.N.Y. 2012) (internal citations omitted).  Here, the request qualifies for the second exemption since Plaintiffs cannot and could not present their federal claims in the state court eviction proceeding relating to their request for an injunction:  an owner's personal use holdover summary eviction proceeding under 9 N.Y.C.R.R. § 2524.4(a). There are two reasons why this is the case, one general and one specific to the particular eviction proceeding at issue here.

The general reason is that, as the Second Circuit and courts within it have recognized, Housing Court lacks subject matter jurisdiction to issue equitable and injunctive relief for fair

---

[8] *See, e.g., Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287-88 (1970); *Pathways, Inc. v. Dunne*, 329 F.2d 108, 113 (2d Cir. 2003) (citing *County of Imperial v. Munoz*, 449 U.S. 54, 58-59 (1980).

12

9968411v.1

housing claims and is not an adequate forum for litigation of federal discrimination claims.  *See, e.g., Bottini v. Sadore*, 764 F.2d 116, 121-22 (2d Cir. 1985) (circumscribed jurisdiction of housing court and lack of discovery as of right denied plaintiff full and fair opportunity to litigate Title VII claim in housing court); *U.S. v. Katz*, 2011 WL 2175787 at *8 (S.D.N.Y.) (observing that housing court's equitable jurisdiction is limited to enforcing housing standards, which does not include fair housing claims).  In view to New York state policy requiring that eviction proceedings such as that at issue here be litigated in Housing Court,[9] the only state forum where Moving Plaintiffs could litigate their eviction-related fair housing claims is utterly powerless to afford them a remedy and ill-equipped generally to afford them a full and fair opportunity to litigate their claim.  This points to the second reason particular to the eviction proceeding at issue here.

With the particular type of eviction proceeding at issue here, raising a federal claim would be a futile gesture because issues fundamental to a fair housing claim are irrelevant to the disposition of an owner's use proceeding claim.  Specifically, New York law simply requires that an owner have a good-faith intention to recover the premises for personal use, regardless of whether the owner is motivated by other discriminatory considerations.  To that end, the owner can prevail even if there are vacant units, the owner is motivated by economic considerations, or there is a history of discord between the parties.  *See, e.g.*, *Berlinrut v. Leventhal*, 43 AD2d 522 (N.Y. App. Div. 1st Dept. 1973) ("The owner is not required to occupy an apartment that is not controlled and thus diminish his income from his property. The administrative inquiry into good faith should be restricted to a search for the landlord's honest intention to gain possession for his own use."); *Rogers v. Joy*, 58 A.D.2d 545 (N.Y. App. Div. 1st Dept. 1977) (noting that an

---

[9] *See, e.g., Cox v. JD Realty Assocs.*, 217 AD2d 179, 182-83 (N.Y. App. Div. 1st Dept. 1995) (dismissing action commenced  by tenant on basis that housing court is the preferred forum for landlord-tenant disputes).

13

9968411v.1

"unbroken line of cases" have "established" the rule that a landlord seeking a certificate of eviction "need not occupy an uncontrolled vacant apartment"); *Delavan v. Spirounias*, 11 Misc.3d 138(A) (N.Y. App. Term. 1st Dept. 2006) (holding that owner could specifically seek to recover rent-regulated garden apartment even though there were vacancies); *Horsford v. Bacott*, 5 Misc.3d 132(A) (N.Y. App. Term. 1st Dept. 2006) (owner can have good-faith intention entitling it to recover possession even if there are vacancies and a history of discord between owner and tenant facing eviction), *aff'd* 32 A.D.3d 310 (N.Y App. Div. 1st Dept.) and 8 N.Y.3d 874 (2007).

So the state law standard allows an owner to prevail in an owner's use case even if the owner is also motivated by discriminatory animus perfectly consistent with a genuine intention to recover the premises for personal use. For example, state law standards allow an owner to seek for personal use just those units which are occupied by rent-stabilized Latinos, even if there are vacancies.

In stark contrast, the history of vacancies and an owner's mixed motives are material to fair housing claims. As discussed above, an owner's failure to advertise vacancies is a stand-alone violation of the FHA;[10] where unadvertised vacancies are exclusively rented out to one class of people, that phenomenon can support a reasonable inference[11] of discrimination given the prohibition on offering rentals for one group only. *See Jones v. Alfred H. Mayer*, 392 U.S. 409, 421 (1968) (property placed on market for whites only constitutes discriminatory denial of housing on basis of race).

---

[10] 42 U.S.C. 3604(d); 24 C.F.R. §§ 100.50(b)(5) and 100.75(c)(4).
[11] *See, e.g.*, *United States v. Town Hall Terrace Assn*, 1997 WL 128353 at *4 (W.D.N.Y.) (reasonable inference of prohibited discrimination supported by evidence black tester was offered apartment on different terms to white testers).

14

9968411v.1

More fundamentally, federal law is clear that taking an action motivated, at least in part, by discriminatory intent violates fair housing laws, regardless of whether the discriminatory motive predominates. *See, e.g.*, *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1042 (2d Cir. 1979) ("[R]ace need not be the sole motivating factor in a denial that has discriminatory effect in order for plaintiff to succeed in a [Fair Housing Act] claim" (citations omitted).; *MHANY Management Inc. v. County of Nassau*, 819 F.3d 581. 616 (2d Cir. 2016) (same, citations omitted); *U.S. v. Pelzer Realty Co., Inc.*, 484 F.2d 438, 443 (5th Cir. 1973) (holding that even though racial prejudice did not dominate defendant's mind and his primary goal was to make money, fair housing claim lay because defendant intended to deprive individuals of housing rights); *Smith v. Sol D. Adler Realty Corp.*, 436 F.2d 344, 349-50 (7th Cir. 1970) ("We find no acceptable place in the law for partial discrimination"). The discriminatory intent need not even be "motivated by personal prejudice or animus." *Johnson v. Macy*, 145 F.Supp.3d 907, 915 (C.D. Cal. 2015).

As <u>Katz</u> observes, in Housing Court, any conflict between state court standards and federal standards is resolved against federal rights. Specifically, Housing Court excludes federal claims from eviction proceedings; it does so where the federal defense is not related to the core issue of the eviction case such as, like those proceedings at issue in <u>Katz</u>, whether a tenant owes rent. *See Katz*, 2011 WL 2175787 at \*2 ("Even if the Intervenor Plaintiffs had actually sought redress for sexual harassment during the eviction proceedings Katz brought against them, as discussed above, the Housing Court would have been without jurisdiction to hear those claims and afford the full measure of relief the Intervenor Plaintiffs seek in this lawsuit. . . . The housing Court is a court of limited jurisdiction"); *see also Tellock v. Davis*, 2002 WL 31433589 at \*4 (E.D.N.Y.) (observing that housing court has no jurisdiction over discrimination counterclaim).

15

9968411v.1

For these two reasons, the injunction requested here is not barred by the AIA.  In view to Housing Court's status as a limited forum and given the stark differences between state standard for owner's use proceedings and federal anti-discrimination standards, Moving Plaintiffs' federal claims cannot and could not effectively be considered in Housing Court.  Their request for an injunction preventing an injury to their federal rights is necessary in aid of this Court's jurisdiction.  *See Sinisgallo*, 865 F.Supp.2d at 320 (citing *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4th Cir. 1970)).

## V.    PLAINTIFFS SHOULD BE RELIEVED OF THE REQUIREMENTS OF FRCP 65 (C) BECAUSE THEY ARE INDIGENT AND DEFENDANTS CAN SHOW NO HARM FROM WAIVER OF THE SECURITY REQUIREMENT

As impoverished persons,[12] Plaintiffs should be relieved of the requirements of Federal Rules of Civil Procedure 65(c).

Federal Rules of Civil Procedure 65(c) provides, in relevant part, that, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

However, a majority of federal circuits leave to the trial court's discretion not just the amount of the bond, but the question of whether to require a bond at all. "The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978); *see also*, *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974). *See Doctor's Assocs., Inc. v. Distajo*,107 F.3d 126, 136 (2d Cir.1997) ("Rule 65(c) gives the district court wide discretion to

---

[12] *See* Santiago Decl., ¶17; Oyola Decl., ¶ 2.

16

set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm ...." (internal quotation marks omitted))

Many federal courts have treated a plaintiff's poverty as reason to require a nominal bond or none at all. Requiring a substantial bond would effectively deny an impoverished plaintiff judicial review because an impoverished plaintiff could not otherwise secure an injunction to avoid irreparable harm while awaiting a judgment on the merits of the case. *See La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807 n.13 (S.D.N.Y. 1990); *Lopez v. Delta Funding Corp.*, 1998 WL 1537755, at *15 (E.D.N.Y. Dec. 23, 1998); *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y.1991); *Kulakowski v. Rochester Hosp. Serv. Corp.*, 779 F. Supp. 710, 717 (W.D.N.Y. 1991); *Warner v. Ryobi Motor Prods. Corp.*, 818 F. Supp. 907, 909 (D.S.C. 1992); *Rivera v. Town of Huntington Housing Auth.*, 2012 BL 132367, at *7 (E.D.N.Y. May 29, 2012) ("Moreover, it seems evident that plaintiff, a recipient of Section 8 benefits and a litigant proceeding in forma pauperis, does not have sufficient funds to post a bond . . . Under these circumstances, and in its discretion, the Court hereby dispenses with the bond requirement."); *Lopez v. Delta Funding Corp.*,1998 WL 1537755, at *15 (E.D.N.Y. Dec. 23, 1998) (finding plaintiffs, as "indigent persons," were not required to post bond under Rule 65(c)); *Doe v. Perales*, 782 F. Supp. 201, 206 (W.D.N.Y. 1991) ("Since plaintiffs apparently do not have sufficient resources to post a security bond, they would be precluded from maintaining this action if such a bond were required."); *Bass v. Richardson*, 338 F. Supp. 478, 490 (S.D.N.Y. 1971) ("It is clear to us that indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c).").

Here, Plaintiffs Oyola and Santiago are indigent. (*See* Oyola Decl., ¶ 2; Santiago Decl., ¶ 17). Specifically, Plaintiff Oyola's household income is approximately $1200 a month, and Plaintiff Santiago receives supplemental security income.

Defendants also cannot prove that, absent the posting of a bond, they will suffer any actual harm. *N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010); *Heisman Trophy Trust v. Smack Apparel Co.*, 595 F. Supp. 2d 320, 329 (S.D.N.Y. 2009); *Rivera v. Town of Huntington Housing Authority*, 2012 WL 1933767, at \*7 (E.D.N.Y. May 29, 2012).

The Court should, accordingly, exercise its discretion and waive the requirements of FRCP 65(c).

## CONCLUSION

Should Moving Plaintiffs be evicted from the premises, the harm that will accrue to them will be immediate and irreparable – rendering them homeless and irreversibly prejudicing their fair housing claims at issue in this case in addition to de-rooting them from their homes and community of thirty years. If, however, a temporary restraining order and preliminary injunction are granted for the pendency of this litigation, Plaintiffs will avoid this grave injury as they seek to protect their civil rights and preserve their place in their communities. For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be granted.

9968411v.1

Dated:  August 22, 2017
      New York, NY

                                        Respectfully submitted,

By: _____
                        Gregory E. Louis (GL6417)
                        Sara Wolkensdorfer (SW8668)
                        Shekar Krishnan (SK 9995)
                        *Of Counsel to Martin S. Needelman, Esq.*
                        **Brooklyn Legal Services Corporation A**
                        260 Broadway, Suite 2
                        Brooklyn, New York 11211
                        (718) 487-2300

9968411v.1